UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MOISES SALAZAR,

    Plaintiff,

v.                                                    CASE NO. 8:17-cv-2535-T-23AEP

BANK OF AMERICA, N.A.,

    Defendant.
_____/

## **ORDER**

A decade ago, the Treasury Department introduced the Home Affordable Modification Program, which allegedly requires a participating bank to use "reasonable efforts" to modify the mortgage of a person in default or reasonably likely to default.[1] After an eligible mortgagor applies for a modification, the program requires several "trial payments" before the bank approves the modification.

In June 2017, Moises Salazar and 118 other plaintiffs sued Bank of America in a single action.[2] *Case no.* 8:17-cv-1534-RAL (M.D. Fla. June 27, 2017). The

---

[1] Bank of America disputes that a "reasonably foreseeable" likelihood of default qualifies a mortgagor for a modification and contends that a modification requires either delinquency or an "imminent default."

[2] In October 2016, several dozen plaintiffs (but not Moises Salazar) sued Bank of America in a single action in the Circuit Court for Hillsborough County, and the bank invoked diversity jurisdiction and removed the action. *Case no.* 8:16-cv-3384-SCB (M.D. Fla. Dec. 12, 2016). Moving to dismiss the action, Bank of America argued misjoinder of the plaintiffs' claims, failure to plead fraud with particularity, failure to state a claim, expiration of the four-year limitation, and the absence of a private right to sue a bank for violating the requirements of the Home Affordable Modification Program. Before the presiding judge resolved the motion to dismiss, the plaintiffs voluntarily dismissed the action.

292-page "shotgun" complaint, which copied swaths from a *qui tam* complaint in the Eastern District of New York,[3] alleged fraud and the violation of Florida's Deceptive and Unfair Trade Practices Act.  In the part of the complaint specific to him, Salazar alleged that in July 2011 a Bank of America employee, "Jorge," told Salazar that a modification requires a default.  (Doc. 1 at ¶ 209 in case no. 17-cv-1534)  Bank of America allegedly omitted to mention that a reasonably foreseeable likelihood of default might qualify a mortgagor for a modification.  Moving to dismiss the complaint, Bank of America argued misjoinder of the plaintiffs' claims, failure to plead fraud with particularity, failure to state a claim, expiration of the four-year limitation, and the absence of a private right to sue a bank for violating the requirements of the Home Affordable Modification Program.

      Before resolving the motion to dismiss, the presiding judge observed that the complaint, which alleged neither each plaintiff's citizenship nor the amount in controversy between each plaintiff and Bank of America, failed to invoke diversity jurisdiction.  (Doc. 15 in case no. 17-cv-1534)  Ordered to amend the complaint to invoke diversity jurisdiction, Salazar and the other plaintiffs submitted a 403-page complaint.  (Doc. 16 in case no. 17-cv-1534)  For the second time, Bank of America moved to dismiss Salazar's complaint and repeated the arguments from the earlier motion.  The presiding judge in that action found misjoinder, severed the plaintiffs' claims, and ordered the plaintiffs to sue separately.

---

[3] *United States ex rel. Gregory Mackler v. Bank of America, N.A.*, Case no. 1:11-cv-3270-SLT (E.D.N.Y. July 7, 2011).

The plaintiffs heeded the presiding judge's command. Between October 30, 2017, and November 3, 2017, more than a hundred plaintiffs sued Bank of America in the Middle District of Florida in eighty actions and alleged fraud under Florida common law. Excepting names, dates, addresses, and the like, the complaints are identical. The actions are distributed among eight district judges in the Middle District of Florida. In two actions, the presiding judges found the claims barred by the four-year limitation.[4]

In Salazar's third complaint (but the first complaint in this case), Salazar alleges (Doc. 1) four misrepresentations by Bank of America. First, Bank of America allegedly failed to mention that a reasonably foreseeable danger of default might qualify a mortgagor for a modification; second, Bank of America stated that the mortgagor failed to provide Bank of America with the documents necessary to complete the modification; third, Bank of America orally notified the mortgagor that the bank approved the requested modification; and fourth, Bank of America charged a "fraudulent" inspection fee. For the third time, Bank of America moved (Doc. 9) to dismiss the complaint. Salazar has not — in any motion, pleading, or other paper — moved at any moment in this action for leave to amend the complaint.

A February 1, 2018 order (Doc. 12) dismisses each fraud claim except the claim that Bank of America omitted to mention that a reasonably foreseeable

---

[4] *Torres v. Bank of America, N.A.*, 2018 WL 573406 (M.D. Fla. Jan. 26, 2018) (Lazzara, J.), *appeal filed* (Case no. 18-10698); *Paredes v. Bank of America, N.A.*, 2018 WL 1071922 (M.D. Fla. Feb. 27, 2018) (Chappell, J), *appeal filed* (Case no. 18-11337).

likelihood of default might qualify a mortgagor for a modification. In this claim, Salazar alleges that Bank of America instructed him on July 28, 2011, to "refrain from making his regular mortgage payments" in order to qualify for a modification. (Doc. 1 at ¶ 37) Bank of America allegedly omitted to mention that a reasonably foreseeable likelihood of default can qualify a mortgagor for a modification. (Doc. 1 at ¶ 37) Confusingly, Salazar alleges elsewhere in the complaint that a modification requires not a reasonably foreseeable likelihood of default but rather an "eminent [sic] default." (Doc. 1 at ¶ 38) In either event, unaware of his option not to default, Salazar allegedly "refrained from" paying his mortgage and, as a result, "fell into default status." (Doc. 1 at ¶ 39) As a "direct result" of Bank of America's alleged omission, Salazar allegedly suffered the loss of both his home and the equity in his home. (Doc. 1 at ¶ 39)

Moving (Doc. 24) for summary judgment, Bank of America observes that Salazar defaulted in June 2008, three years before Bank of America's alleged omission. In an affidavit that accompanies his response, Salazar affirms that he defaulted on the mortgage "due in part to the state of the economy and my own personal financial obligations." (Doc. 26 at 6) Two paragraphs later, Salazar swears that, when he called Bank of America on July 28, 2011, he "was capable of and intended to start making my mortgage payments." (Doc. 26 at 6) Salazar affirms that Bank of America advised him not to cure the default and that he suffered a foreclosure after relying on Bank of America's advice. (Doc. 26 at 7) Objecting to

likelihood of default might qualify a mortgagor for a modification. In this claim, Salazar alleges that Bank of America instructed him on July 28, 2011, to "refrain from making his regular mortgage payments" in order to qualify for a modification. (Doc. 1 at ¶ 37) Bank of America allegedly omitted to mention that a reasonably foreseeable likelihood of default can qualify a mortgagor for a modification. (Doc. 1 at ¶ 37) Confusingly, Salazar alleges elsewhere in the complaint that a modification requires not a reasonably foreseeable likelihood of default but rather an "eminent [sic] default." (Doc. 1 at ¶ 38) In either event, unaware of his option not to default, Salazar allegedly "refrained from" paying his mortgage and, as a result, "fell into default status." (Doc. 1 at ¶ 39) As a "direct result" of Bank of America's alleged omission, Salazar allegedly suffered the loss of both his home and the equity in his home. (Doc. 1 at ¶ 39)

Moving (Doc. 24) for summary judgment, Bank of America observes that Salazar defaulted in June 2008, three years before Bank of America's alleged omission. In an affidavit that accompanies his response, Salazar affirms that he defaulted on the mortgage "due in part to the state of the economy and my own personal financial obligations." (Doc. 26 at 6) Two paragraphs later, Salazar swears that, when he called Bank of America on July 28, 2011, he "was capable of and intended to start making my mortgage payments." (Doc. 26 at 6) Salazar affirms that Bank of America advised him not to cure the default and that he suffered a foreclosure after relying on Bank of America's advice. (Doc. 26 at 7) Objecting to

Salazar's maintaining two putatively irreconcilable sets of factual assertions (that is, "I was not in default" and "I was in default"), Bank of America replies (Doc. 30) that Salazar cannot in effect amend his complaint by responding to a motion for summary judgment with facts that conflict with the allegations in the complaint. Bank of America argues that the record reveals no genuine dispute of material fact about the fraud claim alleged in the complaint.

As Bank of America correctly observes, the fraud claim in the complaint appears to conflict irreconcilably with the argument in the response to Bank of America's motion for summary judgment. In the complaint, Salazar alleges:

> Relying on the false statement and omission, [Salazar] refrained from making [his] regular mortgage payment and fell into default status.

(Doc. 1 at ¶ 39) In the response to Bank of America's motion for summary judgment, Salazar argues:

> The fact that [Salazar] was in default at the time of the phone call is irrelevant because it was [Bank of America's] statements that stopped [Salazar] from getting out of default.

(Doc. 26 at 3) In other words, in responding to the motion for summary judgment Salazar tacitly concedes that he defaulted before the July 28, 2011 omission and asserts a new theory — that he "intended" to cure the default but that Bank of America's omission misled him into permitting the default to persist.

For more than a year, Salazar has evaded Bank of America's repeated efforts to confront the merits of the fraud claim. Responding to a motion for summary judgment that refutes the fraud claim in the complaint, Salazar attempts to prolong

this litigation by asserting a new and different theory. Although the protracted history of this litigation suggests an unwillingness or an inability by the plaintiff to articulate specifically the perceived wrong, Salazar may amend the complaint a final time and no later than **MAY 25, 2018**, to allege a fraud claim based on Bank of America's misrepresentation of the eligibility requirement for a modification. **The fraud theory alleged in the complaint — or in the amended complaint if Salazar elects to amend the complaint — will control the balance of this litigation**. Also, if Salazar elects to amend the complaint, the amendment must (1) clarify whether a modification requires an "imminent" danger of default or a "reasonably foreseeable" likelihood of default and (2) must cite the statute, regulation, rule, or other authority that establishes the eligibility requirement for a modification under the Home Affordable Modification Program. If the third amended complaint fails to state a claim or fails to plead fraud with particularity in accord with Rule 9(b), Federal Rules of Civil Procedure, Salazar may not submit a fourth amended complaint. If Salazar elects not to amend the complaint or fails to timely amend the complaint, a further order will promptly determine whether Bank of America's motion shows the absence of a factual dispute about the fraud claim alleged in the October 30, 2017 complaint. (Doc. 1)

After Bank of America moved to dismiss this action and the other eighteen actions on this docket,[5] the plaintiff's counsel submitted an identical response in

---

[5] *Gonzalez*, 5:17-cv-519-SDM; *Varela-Pietri*, 8:17-cv-2534-SDM; *Salazar*, 8:17-cv-2535-SDM;
(continued...)

every action.  In each action in which Bank of America moved for summary judgment, the plaintiff's counsel submitted an identical response.  An affidavit from each plaintiff accompanies each response, and excepting names, dates, and addresses the affidavits appear identical.  As evidenced by Rule 9(b)'s particularity requirement, litigating a fraud claim requires careful attention to the details of each action.  If Salazar elects to amend the complaint, the plaintiff's counsel must tailor each complaint to the facts of each action and must not submit another boilerplate complaint.

        ORDERED in Tampa, Florida, on May 18, 2018.

                                                                                          *[signature]*
                                      STEVEN D. MERRYDAY
                                    UNITED STATES DISTRICT JUDGE

---

[5](...continued)
*Diaz*, 8:17-cv-2537-SDM; *Rostgaard*, 8:17-cv-2538-SDM; *Mosquea*, 8:17-cv-2551-SDM; *Peralta*, 8:17-cv-2580-SDM; *Rodriguez*, 8:17-cv-2583-SDM; *Ruiz*, 8:17-cv-2586-SDM; *Santos*, 8:17-cv-2588-SDM; *Acosta*, 8:17-cv-2592-SDM; *Blanco*, 8:17-cv-2593-SDM; *Garcia*, 8:17-cv-2602-SDM; *Zalazar*, 8:17-cv-2603-SDM; *Perez*, 8:17-cv-2623-SDM; *Moncada*, 8:17-cv-2625-SDM; *Espinel*, 8:17-cv-2628-SDM; *Ocampo*, 8:17-cv-2631-SDM; *Carmenates*, 8:17-cv-2635-SDM.